2018R00407/MPP/HG

FILED_____  ENTERED
_____ LOGGED_____ RECEIVED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FEB - 1 2022

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** DLB 22cr31 |
| **v.** | **(18 U.S.C. § 371, Conspiracy; 18 U.S.C.** |
| **JOHN R. CONIGLIARO,** | **§ 981(a)(1)(C), 21 U.S.C. § 853(p), 28** |
| | **U.S.C. § 2461(c), Forfeiture)** |
| **Defendant.** | |

**INFORMATION**

**COUNT 1**
**Conspiracy**

The United States Attorney for the District of Maryland charges that:

**Background**

1.      Defendant **JOHN R. CONIGLIARO** ("**CONIGLIARO**") was a resident of Harford County, Maryland. **CONIGLIARO** was the owner and Chief Executive Officer of EISCO, Inc. ("EISCO"). EISCO was located at 4011 Miller Road, Kingsville, Maryland 21087.

2.      Aberdeen Proving Ground ("APG") was a U.S. Army facility located adjacent to Aberdeen, Harford County, Maryland.

3.      The U.S. Army Combat Capabilities Development Command ("CCDC") Chemical Biological Center ("CB Center") located at APG was the nation's principal research and development center for nonmedical chemical and biological weapons defense. The CB Center developed technology in the areas of detection, protection, and decontamination.

4.      Among other tools, the scientists and researchers at the CB Center utilized an Ambient Breeze Tunnel for its aerosol and bio-aerosol detection research and testing. The Ambient Breeze Tunnel was a converted warehouse that could be maintained at the same

1

2018R00407/MPP/HG

temperature and humidity as the outside temperature, allowing testing to take place in actual environmental conditions. The Ambient Breeze Tunnel used a high-efficiency particulate air ("HEPA") filtration system to pump air in and out of the Ambient Breeze Tunnel.

5.      From February 2009 until the present, a public official, "PUBLIC OFFICIAL 1," was employed by the Army as a Research Biologist at the CCDC CB Center.

### The Conspiracy and its Objects

6.      From in or about 2012 to in or about 2019, in the District of Maryland and elsewhere, the defendant,

### JOHN R. CONIGLIARO,

knowingly and willfully conspired and agreed with PUBLIC OFFICIAL 1 and other co-conspirators known and unknown to members of the Grand Jury, to violate 18 U.S.C. § 201(b), whereby **CONIGLIARO** did, directly and indirectly, corruptly give, offer, and promise a thing of value to PUBLIC OFFICIAL 1, a public official, with the intent to influence an official act, that is **CONIGLIARO** gave cash and other financial benefits to PUBLIC OFFICIAL 1 in exchange for PUBLIC OFFICIAL 1 undertaking an official act on behalf of the CB Center that benefited EISCO and **CONIGLIARO**.

7.      The objects of the conspiracy were to:

   a.  direct CB Center work to EISCO in exchange for things of value given to PUBLIC OFFICIAL 1;

   b.  obtain financial benefits for PUBLIC OFFICIAL 1 and **CONIGLIARO**; and

   c.  hide the things of value being provided to PUBLIC OFFICIAL 1 in exchange for official acts.

2

2018R00407/MPP/HG

## Overt Acts in Furtherance of the Conspiracy

8.      On or about July 22, 2013, PUBLIC OFFICIAL 1 caused the government to award Contract No. W911SR-10-D-004-0010, Modification No. 26, to a prime contractor, Science Applications International Corporation ("SAIC"), with the expectation that SAIC would retain EISCO to perform the work.  Pursuant to Modification 26, the CB Center agreed to provide $300,000.00 in funding for work on the Ambient Breeze Tunnel.

9.      On September 12, 2013, **CONIGLIARO** paid $349.41 for brake lines to be installed on PUBLIC OFFICIAL 1's personal vehicle.

10.     On October 7, 2013, **CONIGLIARO** gave PUBLIC OFFICIAL 1 $40,000.00 in cash to finance the purchase of rental properties.

11.     On October 7, 2013, PUBLIC OFFICIAL 1 executed an "Unsecured Promissory Note," ("Promissory Note"), documenting that **CONIGLIARO** had given PUBLIC OFFICIAL 1 $40,000.00, purportedly as a zero percent interest loan, which would be repaid within six months.

12.     On October 7, 2013, **CONIGLIARO** sent a text message to PUBLIC OFFICIAL 1 stating, "I'm giving you 2k more after the tunnel job is done."

13.     On or about October 31, 2013, PUBLIC OFFICIAL 1 purchased two real estate properties in Perryville, Maryland ("Perryville Rental Properties") using the funds that **CONIGLIARO** had provided to PUBLIC OFFICIAL 1.

14.     On June 14, 2014, PUBLIC OFFICIAL 1 amended the Promissory Note, documenting that: (1) PUBLIC OFFICIAL 1 repaid $18,100.00 of the loan by directing CB Center projects to EISCO; (2) **CONIGLIARO** agreed to loan PUBLIC OFFICIAL 1 an additional $25,000.00; and (3) PUBLIC OFFICIAL 1 planned to pay a portion of the outstanding amount of the loans with CB Center projects that PUBLIC OFFICIAL 1 planned to direct to EISCO.

2018R00407/MPP/HG

   a.  PUBLIC OFFICIAL 1's handwritten notes on the Promissory Note detailed how PUBLIC OFFICIAL 1 determined the $18,100.00 amount.  PUBLIC OFFICIAL 1 wrote:

```
Floors          6.6
Autoclave       8.0
Sell Autoclave  3.0
Thresholds      0.5
                18.1
```

   b.  "Floors," "Autoclave," "Sell Autoclave," and "Thresholds" all referred to projects that PUBLIC OFFICIAL 1 had directed to EISCO.

   c.  PUBLIC OFFICIAL 1's handwritten notes also detailed how PUBLIC OFFICIAL 1 intended to repay an additional $22,000.00 to **CONIGLIARO**.  PUBLIC OFFICIAL 1 wrote:

```
Rental   1.0
Crane    4.6
Doors    3.2
Biolabs  13.2
         22.0
```

4

2018R00407/MPP/HG

   d. "Rental," "Crane," "Doors," and "Biolabs" all referred to projects that PUBLIC
OFFICIAL 1 planned to direct, and later did direct, to EISCO.

  15. On October 19, 2014, **CONIGLIARO** made two purchases at Home Depot using
his personal credit card, totaling $2,013.02 for materials that were to be used for renovations to
the Perryville Rental Properties.

  16. On October 22, 2014, **CONIGLIARO** made two purchases at Home Depot using
his personal credit card, totaling $4,864.81 for materials that were to be used for renovations to
the Perryville Rental Properties.

  17. On the dates listed below, **CONIGLIARO**, using EISCO funds, made the
payments listed below to a home renovation contractor ("Renovation Contractor 1"), for work on
the Perryville Rental Properties:

   a. October 20, 2014 payment for $818.75

   b. October 21, 2014 payment for $1,890.54

   c. October 21, 2014 payment for $665.00

   d. October 23, 2014 payment for $715.00

   e. October 24, 2014 payment for $1,179.73

   f. October 24, 2014 payment for $715.00

   g. October 24, 2014 payment for $715.00

   h. October 29, 2014 payment for $2,865.00

  18. On or about December 28, 2016, PUBLIC OFFICIAL 1 caused the Army to award
Contract No. W911SR-10-D-0020, Task Order 004, Modification No. 21 ("Modification 21") to
a prime contractor, Excet, Inc. ("Excet"), with the expectation that Excet would retain EISCO to

5

2018R00407/MPP/HG

perform the work. Modification 21 provided more than $100,158.00 in funding for work on the Ambient Breeze Tunnel.

19.     On or about January 27, 2017, PUBLIC OFFICIAL 1 caused the government to award Contract No. W911SR-10-D-0020, Task Order 004, Modification No. 24 ("Modification 24") to Excet, with the expectation that Excet would award the project to EISCO. Modification 24 provided $394,000.00 in funding for work on the Ambient Breeze Tunnel.

20.     On February 6, 2017, PUBLIC OFFICIAL 1 emailed **CONIGLIARO** a kitchen design and quote from the Home Depot website.

21.     On February 11, 2017, **CONIGLIARO**, using EISCO funds, purchased $8,960.03 of items from Home Depot, including many of the items listed in PUBLIC OFFICIAL 1's February 6, 2017 email.

22.     On March 21, 2017, **CONIGLIARO** placed an online order with Home Depot for a 33-inch apron sink, which cost $890.39.

23.     On April 20, 2017, **CONIGLIARO**, through EISCO, paid Advanced Granite Solutions $1,000.00 for a granite counter that was to be installed in the kitchen of PUBLIC OFFICIAL 1's personal residence.

24.     On May 8, 2017, **CONIGLIARO**, through EISCO, paid a renovation contractor ("Renovation Contractor 2") $9,146.50 to renovate the kitchen at PUBLIC OFFICIAL 1's personal residence using the materials that **CONIGLIARO** purchased.

25.     On May 26, 2017, PUBLIC OFFICIAL 1 caused the Army to award Contract No. W911SR-10-D-0020, Task Order 004, Modification No. 32 to Excet, with the expectation that Excet would retain EISCO to perform the work. Modification 32 provided $335,000.00 in funding for work on the Ambient Breeze Tunnel.

6

2018R00407/MPP/HG

26.     On July 8, 2017, **CONIGLIARO**, through EISCO, paid Advanced Granite Solutions $1,016.50, which was the remaining balance owed for the granite countertop that was installed at PUBLIC OFFICIAL 1's residence.

27.     On or about August 22, 2017, PUBLIC OFFICIAL 1 caused the Army to award Contract No. W911SR-10-D-0020, Task Order 004, Modification No. 35, to Excet, with the expectation that Excet would retain EISCO to perform the work.   Modification 35 provided $110,158.00 in funding to perform work at Kirtland Air Force Base in Kirtland, New Mexico.

28.     On February 14, 2018, **CONIGLIARO** paid Renovation Contractor 2 $16,430.00 to replace the siding on PUBLIC OFFICIAL 1's personal residence.

18 U.S.C. § 371

2018R00407/MPP/HG

## **FORFEITURE ALLEGATION**

The United States Attorney for the District of Maryland further alleges that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) as a result of the defendant's conviction under the offense set forth in Count One of this Information.

2. Upon conviction of Count One of this Information, the defendant

### **JOHN R. CONIGLIARO**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

3. The property to be forfeited includes but is not limited to a money judgment in an amount equal to the total amount of any property, real or personal, which constitutes or is derived from proceeds traceable to a conviction under Count One of the Information, which amount is approximately $1,800,000.

4. If any of the above-described property, as a result of any act or omission of the defendant:

- cannot be located upon the exercise of due diligence;

- has been transferred, sold to, or deposited with a third party;

- has been placed beyond the jurisdiction of the Court;

- has been substantially diminished in value; or

- has been commingled with other property which cannot be divided without difficulty,

8

2018R00407/MPP/HG

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other substitute property of the defendant up to the value of the

forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

*Erek L. Barron/MPP*
_____
Erek L. Barron
United States Attorney

9